RECEIVED-CLERK
U.S. DISTRICT COURT

2005 JUN 30  P 4: 52

Esther Canty Barnes, Esq. EC-5163
RUTGERS SPECIAL EDUCATION CLINIC
CENTER FOR LAW & JUSTICE
123 WASHINGTON STREET
NEWARK, NEW JERSEY  07102-3192
(973) 353-5576
Attorney for Plaintiff

A.H. on her own behalf and on
Behalf of her son M.H., and M.H.
Individually,

        Plaintiffs,

    v.

05 3307 (Dme)

| | |
|---|---|
| STATE OF NEW JERSEY, DEPARTMENT | : UNITED STTES DISTRICT COURT |
| EDUCATION; THE STATE OPERATED | : FOR THE DISTRICT OF NEW JERSEY |
| DISTRICT OF THE CITY OF NEWARK; | : |
| VITO A. GALIARDI, SR., DAVID | : Civil Action No. |
| HESPE, and LEO KLAGHOLTZ, | : |
| Commissioners of Education; | : COMPLAINT AND JURY |
| MARION BOLDEN and BEVERLY HALL, | : DEMAND |
| Superintendents: THOMAS DUGAN and | : |
| HELENE FELDMAN, Directors of | : |
| Special Services; and John Does | : |
| And Jane Does, (members of child | : |
| Study teams, administrators and | : |
| Principals and teachers), et al. | : |
| | : |
|        Defendants. | : |
| | : |

Plaintiff A.H., individually and on behalf of her son, M.H., by way of complaint says:

### JURISDICTION

1.    Plaintiff brings this complaint seeking redress from the State of New Jersey and the State Operated District of Newark seeking damages for the failure to provide a Free and appropriate public education pursuant to the Individuals With Disabilities Education Act, 20 U.S.C.  § 1400 et seq.; 34 C.F.R. part 300 et seq. (hereinafter "I.D.E.A."); the Rehabilitation Act of 1973, 29 U.S.C.§ 794a (hereinafter "Section 504"); the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12130 et seq. (hereinafter "ADA"); N.J.S.A. 18A:46-1 et seq., N.J.A.C. 6:28-1.1 et seq.; Art. VIII, sec. 4, par. 1 and Art. I, par. 1 of the New Jersey Constitution; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., and the Fourteenth Amendment of the United States Constitution.

2.    This  Court  has  jurisdiction  over  this  action pursuant to 20 U.S.C. Section 1415(i)(3)(A), 28 U.S.C. Section 1331,  and  28  U.S.C.  §  1343(1)  and  (3).    Supplemental jurisdiction is invoked under 28 U.S.C. 1367 over claims under state law.

2

## VENUE

3.    Venue in this district is proper under 28 U.S.C. Section 1391(b) because the claims arose in Essex County, New Jersey.

## PARTIES

4.    Plaintiff   M.H. was born on July 25, 1989 and entered kindergarten at the Rafael Hernandez School in September 1994.   M.H. is a child with a disability as defined by 20 U.S.C. § 1401(a)(1).

5.    Plaintiff M.H., at all times relevant herein, has resided at 25 F Broad Street, Newark, New Jersey. Plaintiff A.H. is the parent of M.H., a student who resides in the Newark School District.

6.    Defendant State of New Jersey, Department of Education, took over the Newark Public Schools and is responsible for its conduct, supervision and management. Defendant New Jersey Department of Education receives federal funds for its programs.

7.    Defendant State Operated School District of the City of Newark Board of Education (Hereinafter referred to as "District") is an agency of the State of New Jersey charged with the supervision, conduct and management of the Newark Public Schools. Defendant District receives federal funds for it's programs.

3

8.   Defendant Vito Gagliardi, Sr., sued in his individual and official capacity, is the Commissioner of Education for the Department of Education and is responsible for carrying out the mandates of various state and federal laws on which Plaintiffs' claims are based.

9.   Defendant David Hespe, being sued in his individual and official capacity, was the Commissioner of Education for the Department of Education from 1999 to 2001 and was responsible for carrying out the mandates of various state and federal laws on which Plaintiffs' claims are based.

10.   Defendant Leo Klagholtz, being sued in his individual and official capacity, was the Commissioner of Education for the Department of Education from 1994 to 1999 and was responsible for carrying out the mandates of various state and federal laws on which Plaintiffs' claims are based.

11.   Defendant Marion Bolden, superintendent of the State Operated District of Newark, being sued in her individual and official capacity, is the chief school administrator and employee of Defendant Board, and had overall responsibility for monitoring and carrying out the mandates of various federal and state laws on which plaintiffs claims are based.

12.   Defendant Beverly Hall, superintendent of the State Operated District of Newark, being sued in her individual and

4

official capacity, was the chief school administrator and employee of Defendant Board prior to Marion Bolden, and had overall responsibility for monitoring and carrying out the mandates of various federal and state laws on which plaintiffs claims are based.

13. Defendant Thomas Dugan, being sued in his individual and official capacity, is the Director of Special Services and employee for the Defendant District in charge of supervision, monitoring, and implementation of all Special Education programs under the jurisdiction of Defendant .

14. Defendant Helene Feldman, being sued in her individual and official capacity, was the Director of Special Services for the Defendant District and employee prior to the Defendant Thomas Dugan, was in charge of supervision, monitoring, and implementation of all Special Education programs under the jurisdiction of Defendant .

15. Defendants Jane Does, John Does and other unnamed parties, consisting of principals, administrators, members of Child Study teams and teachers, being sued in their individual and capacities,were responsible for the identification, evaluation and education of M.H.

16. At all times relevant herein, Defendants individually, separately, and jointly acted under color of state law.

5

## FACTUAL ALLEGATIONS

17.  M.H.  resides  with  his  mother,  in  the  State  Operated School  District  in  the  City  of  Newark,  New  Jersey  at  25  F  Broad Street,  Newark,  Essex  County,  New  Jersey.

18.  M.H.  entered  kindergarten  at  Rafael  Hernandez  School  in Newark  in  September  1994.

19.  In  the  first  grade,  from  September  1995  to  June  1996, M.H.'s  academic  problems  became  evident.   He  received  "D"s  in spelling  and  reading  and  retention  was  recommended.   He  was required  to  attend  summer  school.

20.  From  September  1996  to  June  1997,  while  in  the  second grade,  M.H.  received  "D"s  in  Language  Arts,  Spelling,  Reading  and Math.   Retention  was  again  recommended  and  he  was  required  to attend  summer  school.

21.   In  the  third  grade,  from  September  1997  to  June  1998, M.H.  continued  to  receive  below  average  grades  in  reading  and language  arts.   He  received  "D"s  in  reading  and  language  arts, and  an  "F"  in  spelling.   Again,  summer  school  was  required  in order  for  M.H.  to  be  promoted.   At  this  time,  his  teacher  noted that  M.H.  has  "possible  dyslexia."

22.  An  Individualized  Student  Improvement  Plan  ("ISIP")  was developed  in  September  1997  by  M.H.'s  teacher,  Jean  Sexton,  and Lydia  Donofrio.  The  plan  provided  for  supplemental  reading

6

instruction two times per week for 50 minutes and the use of a computer based program two times  per week for 30 minutes.  No follow-up reports were generated to address whether this plan was working.

23.  In the fourth grade, from September 1998 to June 1999, M.H. continued to receive below average grades.  The District again completed an ISIP in October 1998.  The Plan was developed by Harriett Kourchek,  T. Sweeney, and Lydia Donofrio. It provided for in class instruction four times per week in basic skills and four times per week for ESPA Preparation for 50 minutes per week.  The plan identified deficiencies in math, language arts, reading and literacy and language in all sub-skills.  The district did not provide specific mastery criteria and results in literacy and language arts.  At the end of the school year, there was no improvement in language arts and written skills.  The resource teacher left the school and the plan was not fully implemented. Again M.H. was required to attend summer school.

24.  In June 1999, at the end of the fourth grade,  M.H. was promoted, however, he received "D"s in Language arts, spelling, reading, social studies and science.

25.  During the fifth grade, September 1999 to June 2000, M.H. received "D"s and "F"s  in reading, language arts, spelling,

7

math, social science.  Each of the first three marking periods,
the teacher requested conferences to discuss M.H.'s academic
progress.  Mr. Lalan, the regular education teacher, indicated
that M.H. read at a kindergarten level in the first marking
period and at a first grade level in the second marking period.
M.H. received no supplemental services or remediation in the 5th
grade.

26.  A.H. provided as much support to her son as possible.
She called the District each and every year from M.H.'s 3rd
through 7th grade, asking for assistance with his academic
problems.  In April, 2000, fearing that her son would eventually
graduate from middle school without being able to read, with the
assistance of one of his teachers, she requested, in writing,
that the Child Study Team evaluate her son.

27.  M.H.'s fifth grade teacher, Mr. Lalan, also requested
assistance due to M.H.'s  reading and writing problems, however,
no assistance was provided.

28.  In a letter dated April 5, 2000, A.H.hand delivered  a
letter to the Child Study Team at Rafael Hernandez School,
requesting academic assistance for her son.

29.  An identification meeting was held on May 19, 2000 to
discuss the types of evaluations that would be performed.  In
attendance were Christopher Lalan, M.H.'s 5th grade teacher;

8

Alfreda Nieto, Social worker; Noelina Moyenne, learning
consultatnt; E. Kransiloosky, school psychologist, Juanna
Carrero-Lipsky, school principal; and Alicia Hill, M.H.'s parent.
The district agreed to do an educational, sychological and
medical assessment.

30.  An educational assessment was conducted by Joan
Krotenberg on February 20, 2001, nine months after the initial
identification at which time the parent consented to the
evaluations.  Broad reading was at the

31.  In a notice dated July 16, 2001, a meeting was requested
with the parent on July 26, 2001, to discuss a psychosocial
evaluation and eligibility.

32.  A social assessment was completed by Sonia Rubia, social
worker, at Rafael Hernandez School on October 22, 2001, almost
eight months after the July 26, 2001 meeting.

33.  A psychological assessment was completed on September 25,
2001, sixteen months after the parent's consent.

34.  A neuropsychiatric evaluation was completed on October
25, 2001, eighteen months after the parent's consent to evaluate.

35.  Another meeting was not scheduled until December 3, 2001.
The purpose of the meeting was not delineated on the Notice dated
November 30, 2001 signed by Betty Marriott.  A copy of the Notice
was handed to the parent on December 3, 2001.

36.   On December 3,2001, a meeting was held to determine if M.H. was eligible for special education and related services. M.H. was determined to be eligible for Special Education and related services under the classification of Specific Learning Disabled.

37.   An IEP was not developed until February 2002, more than 30 days after the determination of eligibility.  The Child Study Team failed to obtain input from the parent or to schedule another meeting to discuss the IEP.

38. The initial IEP developed for M.H. was not immediately implemented and services were never provided.  The District attempted to locate an in-district placement but was unsuccessful.  During the period from February  to July 2002, services were  not provided due to the lack of an available certified special education teacher.

39.   No IEP was developed for the 2002-03 school term in accordance with IDEA. The parent's representative requested an IEP meeting to address deficiencies in the IEP and to develop an IEP for the 2002-03 school year.  The parent also requested an out of district placement.  The District refused to hold a meeting at that time and indicated that M.H. had only been recently classified.  The district also refused to provide an out of district placement.

40.   The only IEP that was developed for the M.H. was signed on December 2001.   Instead of holding a subsequent IEP meeting that comported with the terms of IDEA, a representative from Defendant District,altered the dates on the original document to make it appear as if signatures were signed on in February 2002. The District did not begin to implement the IEP dated December 2001 and February 2002 until September 2002.

41. In September 2002, M.H. was placed in a self contained class.   A.H. requested that M.H. be removed from the self contained class to a resource room program when it became apparent that the Program in the self contained class was not meeting M.H.'s unique needs.

42. In an effort to avoid delays in the process, the parent obtained independent evaluations from the Hackensack Children's Hospital.   These evaluations included a Central Auditory Processing evaluation, an educational evaluation, and a psychological evaluation.   .

43.   The evaluations provided that M.H. had a Central Processing Disorder.
The Central Auditory Processing evaluation recommended that a speech and language evaluation be completed.

44.   The parent shared these evaluations with the District. The district failed to consider the evaluations or to determine

whether it would accept or reject them. The District also failed
to conduct a speech and language assessment.

45.   The Program provided at Rafael Hernandez was not
appropriate and failed to meet M.H.'s unique needs.  The District
continued to fail to provide a systematic reading program; failed
to provide instruction with a certified special education
instructor; and failed to develop an appropriate IEP in
accordance with the procedural guidelines of I.D.E.A.

46.   The District also failed to hold any Annual reviews from
2002 to the current date or to provide any reports which indicate
whether M.H. met his goals and objectives or was progressing in
the areas in which he was deficient.

47.   After the parent threatened to file for due process, the
district agreed to send M.H. to an out of district placement.
In September 2003, the District sent M.H. to an inappropriate out
of District placement for children with behavioral disorders.
Prior to placement, the District failed to develop an IEP and to
provide Notice to the parent of a meeting to develop an IEP.  As
a result, the student was placed in an inappropriate placement
for the entire 2003-04 school year.  Several requests were made
to remove M.H. from the placement, without success.

48.   The parent made several requests to have a meeting to
develop an appropriate IEP.  Additionally, on November 26, 2003,

12

the parent requested independent psychological, educational, speech and language, and central auditory processing evaluation. The District responded by indicating that there was no basis for requests for a central auditory processing evaluation and a speech and language assessment.

49. A meeting was scheduled on March 23, 2004 at the Essex Valley School in West Caldwell, New Jersey. The meeting was attended by the casemanager, a supervisor from the District, the Principal from Essex Valley, the parent and legal representatives for both parties. Although the meeting lasted over two hours, the teacher did not attend the meeting. When asked about the teacher's absence, the parties were told that she was waiting for coverage for her class. She did not participate in the meeting or provided input. When asked whether the teacher was a certified special education teacher or a reading specialist, the representative from the Essex Valley School responded that she was not a certified teacher. Additionally, M.H.'s program did not include reading or focused on his unique reading and writing disorders.

50. At the meeting on March 22, 2004, the district agreed to provide additional evaluations. The district agreed to perform a speech and language assessment and to provide an independent educational assessment. The parent requested an independent

psychological evaluation, but the district's psychologist did not believe that one was necessary. The parent did not agree with this determination and obtained an independent psychological evaluation on her own. The evaluation was instrumental in getting M.H. admitted to the Craig School. The previous year M.H. had been rejected because of his low reading level and the psychological assessment which placed him in the borderline level of intelligence.

51. In June 2004, the district provided copies of the evaluations to the parent. The parent did not agree with the district's speech and language assessment and requested an independent evaluation. The independent speech and language evaluation revealed that M.H. has overall severely impaired expressive and receptive language skills as well as problems remembering, formulating sentences and weak semantic skills. She recommended that in order to remediate his problem he would need speech and language services four times per week. Additionally, she indicated that M.H. would meet the classification criteria of "Communications Impaired."

52. The independent educational evaluation also revealed that M.H. had a reading disorder and a disorder of written expression.

14

53.   The independent psychological evaluation revealed that M.H. was of average intelligence and diagnosed him with a Reading Disorder and Disorder of Written Expression.

54.   M.H. made no progress while at the Essex Valley School.

55.   In the fall of 2004, M.H. was finally placed at the Craig School in Lincoln Park where he receives Speech and language Services two days per week and assistive technology to assist him with reading assignments.

56.   M.H. has two more years of schooling before he is expected to graduate.   There is not sufficient time within which to make up for the District's failure to provide an appropriate education from grades One through Nine.

57.   The District failed to identify M.H. in a timely manner even though it had notice that he was potentially a child with a disability as early as the first grade.

58.   The District failed to evaluate M.H. in all areas of suspected Disabilities. He was not evaluated for a Speech and language disorder until the tenth grade.   He was determined to have a central auditory processing problem for which he received no remediation.   The Current Speech and language services are inadequate to remediate the many years of deprivation.

15

59.  The District failed to advise the parent of her rights under IDEA or to act immediately upon the parents many requests for assistance, meetings, and evaluations in a timely manner.

60.  The District failed to develop IEPs within the procedural guidelines of I.D.E.A. or to ensure that an IEP was developed on a yearly basis after M.H. was found to be eligible for classification.

61.  The District failed to meet its Child Find Obligations.

62.  The District failed to evaluated M.H. in all areas of suspected disabilities.

## COUNT ONE

Plaintiffs repeat the allegations of paragraphs one through as 62 as if set forth fully herein.

63. I.D.E.A. grants federal funds to the State of New Jersey to assist in educating disabled children. Receipt of those funds is dependant upon New Jersey's compliance with the requirements of I.D.E.A. 20 U.S.C.§ 1411. New Jersey takes part in this federal program.  N.J.S.A. 18A: 46-1 et seq.; N.J.A.C. 6A: 14-1.1 et seq.

64   M.H. is a child with a disability as defined by 20 U.S.C. § 1401(3)(A) and is entitled to a free and appropriate public education.

65. I.D.E.A. requires that all children residing in the state, and who are in need of special education and services, be identified, located, and evaluated regardless of the severity of their disability. 20 U.S.C. § 1412 (2) (c).

66. I.D.E.A. further requires that the initial evaluation include assessments in all areas of suspected disabilities, 20 U.S.C. § 1414(b)(3)(c), 34 C.F.R. S 300.352(g) and that tests and evaluations are not racially or culturally biased. 34 C.F.R. S 300.352(a)(1)(I). The New Jersey regulations implementing I.D.E.A. [N.J.A.C. 6A: 14-1.1 et. seq.] require that the initial evaluation include a functional assessment of behavior when appropriate. N.J.A.C. 6A: 14-3.4(d)(2).

67. Defendants' initial evaluation of M.H.'s did not include a speech and language evaluation. Moreover, although the initial evaluations revealed that additional assessments were warranted, the District failed to conduct further evaluations.

68. I.D.E.A. and N.J.A.C. also require a variety of assessment tools and strategies to gather relevant functional and developmental information, including information from the parent and others when appropriate. 34 CFR 500.532(b), N.J.A.C. 6A: 14-2.5(a)(i)(ii)

17

69.   Defendant District's initial evaluations were deficient and failed to evaluate M.H. in all areas of suspected disabilities.

70.   The Defendants failed to request additional evaluations to determine whether M.H. suffered from any other disorders that may impact upon his ability to succeed.

85. Defendant District failed to create an IEP that adequately addressed the particular needs of M.H. as required by 34 C.F.R § 300.346(a)(1) and 34 C.F.R. § 347(a)(2)(i),(ii).

86. Defendant District failed to develop IEPs on an annual basis that complied with the provisions of IDEA and N.J. Administrative Code.

71.   I.D.E.A. also requires that each child with a disability receive a free and appropriate public education [20 U.S.C. § 1412(a)(1)(A)] that emphasizes special education services designed to meet the unique educational needs of the disabled child, and that it is supported by such services as are necessary to permit the child to benefit from such instruction. 20 U.S.C. § 1400. More specifically, I.D.E.A. requires that the IEP team explore the need for strategies and support systems to address issues that may impede the learning of a child with a disability or the learning of his/her peers.   20 U.S.C. § 1414(d)(3)(B)(i), 34 C.F.R. § 300.346(a)(2)(I), N.J.A.C. 6A:14-3.7(c)(3).

18

72. M.H.'s reading and speech problems were inadequately addressed in the IEPs presented by the District and constitute a denial of a free and appropriate public education to which he is entitled under I.D.E.A.

73. I.D.E.A. additionally requires that the free and appropriate public education be provided in the least restrictive environment [U.S.C. § 1412(a)(5)(A), 34 C.F.R. § 300.550, N.J.A.C. 6A:14-4.2] and that districts have available a full continuum of alternative placements to meet the needs of all children with disabilities. 34 C.F.R. § 300.551(a), N.J.A.C. 6A:14-4.2(a)(3). The District failed to provide a continuum of educational placements.

95. The District committed procedural violations of I.D.E.A. where it failed to provide adequate Notice and the appropriate procedural safeguards to A.H. The District must also provide a copy of the evaluation reports to the parents upon completion. 20 U.S.C. 1414(b)(4)(B). The purpose of this requirement is to ensure that the parent is informed concerning the decisions that are to be made regarding the child.

74. I.D.E.A. requires that written notice be provided to parents when a district board of education or parents propose to initiate or decline changes in a disabled student's identification, classification, evaluation, or educational

placement. 20 U.S.C. § 1415 (b)(3)(B), C.F.R. 300.503(a)(1)(ii), N.J.A.C. 6A: 14-2.3 (d)(1)(2)). The New Jersey Administrative Code further requires that if a parent makes the request, the board of education must provide the parent with a meeting or written notice of a decision within 20 days. N.J.A.C. 6A: 14-2.3(f)(5). Defendant District failed to provide written notice setting forth the reasons it rejected the independent evaluations submitted for consideration by A.H.

75. I.D.E.A. requires that school districts provide written notice of scheduled meetings specifying the purpose of the meetings and the participants. C.F.R. 300.501(b)(1); N.J.A.C. 6A:14-2.3(i)(5). Defendant District failed to provide proper notice to A.H. to attend meetings where the purpose was to develop an IEP and to discuss the development of an IEP.

76. I.D.E.A. requires Districts to consider any independent evaluations submitted by a parent in making decisions concerning a disabled child's receipt of special education and related services. C.F.R. 300.502(c)(1); N.J.A.C. 6A:14-3.4(g). The District failed to consider the evaluations submitted by the A.H. in a timely manner.

77. I.D.E.A. requires a District to provide an independent evaluation upon request at no cost to the parent if the parent disagrees with the evaluations, unless the District requests a

20

hearing to show that its evaluation is appropriate. C.F.R. 300.502(a)(2), (b)(1), (b)(2). The Defendant District failed to request due process on this issue and refused to provide the parent with independent evaluations in a timely fashion.

78. I.D.E.A. mandates the parties who must be present at IEP meetings. The Defendant District failed to include the appropriate Members at the IEP Meeting.

79. Defendants' conduct violates Plaintiffs' rights under I.D.E.A. and N.J. statutes and regulations.

80. As a result of Defendants' conduct, Plaintiffs suffered damages, including violations of their rights under I.D.E.A., and emotional distress and anguish.

COUNT TWO

Plaintiffs repeat the allegations of paragraphs one through 80 as if set forth fully herein.

81. Defendants, acting under color of state law, deprived Plaintiffs of rights secured to them under I.D.E.A., in violation of 42 U.S.C. § 1983.

82. Defendants acted with reckless disregard and deliberate indifference to Plaintiffs' rights under I.D.E.A

83. Defendants knew or should have known that they were required to provide a free and appropriate public education to

M.H. and failed to provide any services or special education specifically designed to meet his unique educational needs.

84.    As a result of the Defendants' conduct, Plaintiffs suffered damages including violations of their rights under I.D.E.A, as enforced through 42 U.S.C. § 1983, and emotional distress and mental anguish.

COUNT THREE

Plaintiffs repeat the allegations of paragraphs one through 84 as if set forth fully herein.

85.    Section 504 of the Rehabilitation Act of 1973, as amended, protects persons with disabilities from discrimination or denial of services by programs receiving federal funds. 29 U.S.C. § 794(a).

86.    M.H. is an individual with a disability as defined in 29 U.S.C. § 706(8) who is "otherwise qualified" for the educational programs provided by Defendant District.

87.    M.H. was excluded from participation in, denied the benefits of, and subjected to discrimination at Defendant District's schools.

88.    Defendant District receives federal funds for its educational programs.

89.   Defendants knew, or reasonably should have known, of M.H.'s disabilities.

90.   Defendants' conduct constitutes violations of M.H.'s rights under 29 U.S.C. § 794.

91.   As a result of Defendants' conduct, Plaintiffs suffered damages including violations of their rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and emotional distress and mental anguish.

### COUNT FOUR

Plaintiffs repeat the allegations of paragraphs one through 94 as if set forth fully herein.

92.   Defendants, acting under color of state law, deprived Plaintiffs of rights secured to them under Section 504, 29 U.S.C. § 794, in violation of 42 U.S.C. § 1983.

93.   Defendants acted with reckless disregard and deliberate indifference to Plaintiffs' rights under Section 504.

94.   As a result of the Defendants' conduct, Plaintiffs suffered damages including violations of their rights under Section 504 of the Rehabilitation Act, as enforced through 42 U.S.C. § 1983, and emotional distress and mental anguish.

23

COUNT FIVE

Plaintiffs repeat the allegations of paragraph one through 94 as if set forth herein

95.   The A.D.A. extends the non-discrimination rule of Section 504 of the Rehabilitation Act to services provided by any public entity. 42 U.S.C. § 12132.

96.   The A.D.A. further provides that no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C.  12132.

97.   The  A.D.A.  further  provides  that  the  remedies, procedures,  and  rights  set  forth  in  §  794  (a)  of  Title  29 (Section 504) shall be the remedies, procedures, and rights that 42 U.S.C § 12133 of the A.D.A. provides to any person alleging discrimination on the basis of a disability in violation of § 12132 of the A.D.A.  42 U.S.C. § 12133.

98.   The Defendant District is a public entity as described by 42 U.S.C. § 12133 of the A.D.A. 125. M.H. is an individual with a disability who, under 42 U.S.C. § 12132, was denied the benefits of  the  services,  programs,  and  activities  of  the  Defendant District's public school system.

24

99.   Defendants failed to address M.H.'s disabilities and failed to provide him with a free and appropriate public education.

100.   Defendants' conduct constitutes violations of plaintiffs' rights under the A.D.A. 42 U.S.C. § 12132 and §12133.

101.   As a result of the defendants' conduct, Plaintiffs suffered damages, including violations of their rights under the A.D.A and emotional distress and mental anguish.


COUNT SIX

Plaintiffs repeat the allegations of paragraphs one through 94 as if set forth fully herein.

102. Defendants, acting under color of state law, deprived Plaintiffs of rights secured to them under the A.D.A., 42 U.S.C. § 12132 and 12133, in violation of 42 U.S.C. § 1983, and emotional distress and mental anguish.

COUNT SEVEN

Plaintiffs repeat the allegations of paragraphs one through 102 as if set forth fully herein.

103.   The Fourteenth Amendment of the United States Constitution guarantees due process rights against the deprivation of protected interests in a public education created

by federal and state statutes and regulations and the New Jersey Constitution.

104. Defendants deprived M.H. of his protected interests in a public education without proper notice, opportunity to participate, or other due process rights.

105. Defendants acted with reckless disregard and deliberate indifference to M.H.'s rights.

106. Defendants' conduct violated Plaintiffs' rights to due process as guaranteed by the Fourteenth Amendment of the United States Constitution, and enforced by 42 U.S.C.§ 1983.

107. As a result of Defendants' conduct, Plaintiffs have suffered damages including deprivation of a public education, emotional distress, and mental anguish.

COUNT EIGHT

Plaintiffs repeat the allegations of paragraphs one through 107 as if set forth fully herein.

108. The New Jersey Constitution, Art.1 par.1., guarantees due process rights against the deprivation of protected interests in a public education created by federal and state statutes and regulations, and the New Jersey Constitution.

109. Defendants' deprived M.H. of protected interests in a public education without proper notice, opportunity to appropriately participate or other due process rights.

26

110. Defendants acted with reckless disregard and deliberate indifference to M.H.'s rights.

111. Defendants' conduct violated Plaintiffs' rights to due process guaranteed by the New Jersey Constitution, Art. 1, para.1

112. As a result of the Defendants' actions, Plaintiffs have suffered damages including deprivation of a public education, emotional distress, and mental anguish.

COUNT NINE

Plaintiffs repeat the allegations of paragraphs one through 115 as if set forth fully herein.

113. Plaintiff M.H. has a right to a thorough and efficient education as guaranteed by the New Jersey Constitution (1947), Art. VIII, § 4 par. 1.

114.    Defendants failed and refused to provide M.H. with an appropriate education.    M.H. received no education or an inappropriate education from the Defendant District from the time he entered kindergarten in September 1994 and continues to receive an inappropriate education and services up to the present time.

115. Defendants' conduct constitute a denial of a thorough and efficient education under the New Jersey Constitution.

27

116. The Plaintiffs have suffered damages including violations of their rights under the New Jersey Constitution, emotional distress and mental anguish.

### COUNT TEN

Plaintiffs repeat the allegations of paragraphs one through 116 as if set forth fully herein.

117. Under the New Jersey Law Against Discrimination N.J.S.A. 10: 5-1 et seq., anti-discrimination laws govern public schools and the Defendants had an obligation to provide equal educational opportunities to all students.

M.H. is a disabled student as defined by 29 U.S.C. § 706(8).

118. M.H. is otherwise qualified for the educational programs provided by Defendant District.

119. Defendant District knew or should have known of M.H.'s disability and should have provided him with appropriate educational opportunities.

120. Defendant District denied M.H. equal educational opportunities and advantages, and subjected him to discrimination.

121  Plaintiffs suffered damages including violations of their rights under the New Jersey Law Against Discrimination, emotional distress, and mental anguish.

28

<u>DEMAND</u>

WHEREFORE, Plaintiffs request that this Court:

1.    Assume jurisdiction of this matter;

2.    Declare that Defendants have violated Plaintiffs rights under Federal and State laws;

3.    Declare that the District had an obligation to provide independent evaluations under the circumstances of this case;

4.    Award M.H. compensatory education and related services to compensate for the periods of time in which the District failed to provide a free and appropriate education to M.H.;

5.    Order that the defendant District pay compensatory damages;

6.    Award Plaintiffs reasonable attorneys' fees and costs incurred in litigating this action, including expert fees, pursuant to 20 U.S.C. § 1415 and 20 U.S.C. § 1988; and

7.    Grant such other relief as this Court deems equitable and just.

29

SPECIAL EDUCATION CLINIC
RUTGERS LAW SCHOOL - NEWARK

Dated:    June 30, 2005

By: _____
Esther Canty Barnes,   Esq.

30

THE STATE UNIVERSITY OF NEW JERSEY

# RUTGERS UNIVERSITY
## SPECIAL EDUCATION CLINIC
### SCHOOL OF LAW-NEWARK

S. I. NEWHOUSE CENTER FOR LAW AND JUSTICE
123 WASHINGTON STREET, UNIVERSITY HEIGHTS
NEWARK, NEW JERSEY 07102-3192
TEL: (973) 353-5576
FAX (973) 353-3397

*Esther Canty-Barnes, Esq.*
*Director*
*Jennifer Rosen Valverde, Esq.*
*Staff Attorney*

*Mary Hartnett, Esq.*
*Of Counsel*

October 24, 2003

Clerk of Court
U.S. District Court
District of New Jersey
M.L. King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07102

Re: A.H. o/b/o M.H. v. The State-Operated School District of the City of Newark, The Newark Public Schools, et al

Dear Sir:

I have enclosed herewith our check in the amount of $150.00, and original and two copies of a complaint alleging violations of the Individuals with Disabilites Education Act and other federal and state laws and a civil cover sheet. Please file same and return a copy marked filed.

Thank you for your courtesies.

Very truly yours,

Esther Canty-Barnes, Esq.